**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Hon. Frederick J. Scullin, Jr.** |
| | ) | **Senior U.S. District Court Judge** |
| **AKIL JACKSON** | ) | **Case No. 11-CR-163-001** |
| | ) | |

---

### SENTENCING MEMORANDUM

---

**Preliminary Statement**

  Akil Jackson comes before this Court for sentencing following his plea of guilty to a one-count information charging Mr. Jackson with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. §922(g)(3), in connection with his possession of a handgun on August 14, 2008 in Rensselaer, New York during a time when he was a user of marijuana.

  Counsel for Mr. Jackson was provided with the initial presentence investigation report (PSR) on June 24, 2011.  Mr. Jackson has reviewed the report.  He has no objections to the guidelines computation within the PSR, in which the probation officer has computed the applicable guideline sentencing range to be 18 to 24 months imprisonment.  Mr. Jackson's only clarifications of factual matters have been cited and submitted to the U.S. Probation Office in counsel's letter of June 28, 2011 (attached hereto as Exhibit A).

  Based upon each of the factors to be considered under 18 U.S.C. §3553(a), Mr. Jackson asks the Court to impose a sentence at the low end of the applicable sentencing guidelines.  Mr. Jackson is a young man who had no serious behavioral or legal problems or drug abuse issues

1

before suffering from military-service connected post-traumatic stress disorder, connected with his wartime service in Afghanistan.  His involvement in the criminal justice system since his discharge from the Army stems at least in part from the emotional and psychological difficulties he has faced as a result of PTSD, for which he has never been treated.  His extended time in custody since November of 2009 has given him greater insight into his psychological issues and their effect on his actions and greater awareness of the willing support he has from family and friends to help him to overcome his problems.

Mr. Jackson also asks the Court to credit toward his sentence time he has spent in custody since his arrest in this case on August 14, 2008 (he was detained for 30 days prior to release) and relative to his detention on an unrelated case in Charlestown, Massachusetts since November 9, 2009 (20 months).

## I.     THE COURT'S SENTENCING AUTHORITY AND DUTIES.

### A.     *The Court is required to consider all factors under 18 U.S.C. §3553(a).*

In United States v. Booker, the Supreme Court held that the then-mandatory United States Sentencing Guidelines violated an individual's Sixth Amendment right to a jury trial because they allowed for sentences to be enhanced beyond the maximum sentence supported by a guilty plea or verdict of guilty based upon facts not admitted by the defendant or proved beyond a reasonable doubt.  United States v. Booker, 543 U.S. 220 (2005).  To remedy the constitutional violation arising from mandatory Sentencing Guidelines, the Booker Court rendered the Guidelines advisory.  See, United States v. Kimbrough, 552 U.S. 85, 91, 128 S.Ct. 558, 564 (2007) ("We hold that, under *Booker,* the cocaine Guidelines, like all other Guidelines, are advisory only . . ..").  Formerly mandatory, the Guidelines "now serve as one factor among

2

several courts must consider in determining an appropriate sentence." <u>United States v. Kimbrough</u>, 552 U.S. at 91; <u>see also</u>, <u>Gall v. United States</u>, 552 U.S. 38, 59, 128 S.Ct. 586, 602 (2007) (same).

Although district courts must "give respectful consideration to the Guidelines," the Guidelines are not the only consideration. <u>United States v. Kimbrough</u>, 552 U.S. at 101; <u>Gall</u>, 552 U.S. at 49-50. Instead, district courts must "tailor the sentence in light of other statutory concerns as well." <u>United States v. Kimbrough</u>, 552 U.S. at 101 (quoting <u>United States v. Booker</u>, 543 U.S. at 245-246). These statutory concerns include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for–
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines– . . .
> (5) any pertinent policy statement– . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Supreme Court in <u>Gall</u> directed that in each and every case, and notwithstanding that the sentencing guidelines might call for imprisonment in a given case, "§ 3553(a)(3) directs the judge to consider sentences other than imprisonment." <u>Gall v. United States</u>, 552 U.S. 38, 58-59,

3

128 S. Ct. 586, 601-602 (2007).  Gall's direction comports with §3582, which requires the court, "in determining whether to impose a term of imprisonment... [to] consider the factors set forth in section 3553(a) ... *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*."  18 U.S.C. §3582(a) [emphasis added].

In addition to restoring importance to the statutory factors, Booker and its progeny breathed new life into the primary sentencing mandate of §3553(a), which requires the sentencing court to impose the least severe sentence that will achieve the statutory purposes of punishment–justice, deterrence, incapacitation, and rehabilitation–by imposing a "sentence sufficient, but not greater than necessary," to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).  See, United States v. Kimbrough, 552 U.S. at 101.  This "parsimony provision" is not simply a factor to be considered in determining a sentence; it is the "overarching" command of the statute, establishing a cap above which the sentencing court is statutorily prohibited from imposing a sentence, even when a greater sentence is recommended by the sentencing guidelines. Id.

In fulfilling the mandate of the "parsimony provision," the district court judges must now consider and respond to non-frivolous arguments that the guideline sentence itself reflects an unsound judgment because it fails properly to reflect § 3553(a) considerations and/or does not treat defendant characteristics in the proper way, or because a different sentence is appropriate regardless.  Rita v. United States, 551 U.S. 338, 356-357, 127 S.Ct. 2456, 2468 (2007).  Accordingly, district courts are no longer required--or even permitted--to simply defer to Commission policies, and the judge "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented."  Gall v. United

4

States, 552 U.S. at 49-50; see also, Rita v. United States, 551 U.S. 350-351 (same).  Courts of

Appeals may not "grant greater fact-finding leeway to [the Commission] than to [the] district

judge."  Rita v. United States, 551 U.S. at 347.  Even the government has "acknowledge[d] that .

. . 'courts may vary [from Guidelines ranges] based solely on policy considerations, including

disagreements with the Guidelines.'"  United States v. Kimbrough, 552 U.S. at 101.  See also,

Gall v. United States, 552 U.S. at 59 (finding a sentence outside the Guidelines to be reasonable).

## II.    THE COURT SHOULD IMPOSE A SENTENCE AT THE LOW END OF THE GUIDELINE RANGE, WITH CREDIT FOR TIME IN CUSTODY, IN LIGHT OF ALL OF THE FACTORS UNDER 18 U.S.C. §3553(a).

### A.    *History and Characteristics of Akil Jackson, and Nature and Circumstances of the Offense.*

Akil Jackson is a personable and intelligent young man with a great deal of optimism for

the future, even though his path to this case would not have been likely to invoke that optimism.

He was born to parents who had very little to do with his upbringing.  His father was from Mr.

Jackson's life throughout his childhood.  His mother suffered from a severe drug addiction.

Although she since has overcome her addiction, Mr. Jackson's mother did not care for him as a

child.  Instead he was raised by his maternal grandmother and great grandmother.

Nonetheless, Mr. Jackson's extended family took care of him and provided him with

positive influences.  He was a good student and tested into the competitive Boston Latin

Academy.  He was active as a youth in his church community, sang in the choir and played the

piano.  Despite the positive influences of school and home and the church, the dangerous

environment of Mr. Jackson's poorer Boston neighbor presented great problems.  His

grandmother sent him to live with his aunt in North Carolina to remove him from that

environment.

He graduated from high school in North Carolina and immediately enlisted in the National Guard.  He completed basic training and advance individual training.  After that and while he attended to his regular National Guard duties as required, he enrolled in January of 2000 in Johnson and Wales University's culinary school.  He did not complete the program at Johnson and Wales.  He entered the Army full time in October of 2001 shortly after the September 11th attacks.

Mr. Jackson was deployed to the war zone in Afghanistan in April of 2002 through October of 2002 and then again from June of 2003 to August 2003.  His tour ended after he suffered a knee injury, and he returned to the states for surgical repair.

Mr. Jackson's experience in Afghanistan had a significant impact upon him.  He experienced the chaotic and lethal violence within Afghan civilian communities.  One event seared into his memory involved a young boy who shot and killed another Afghan civilian in the street.  The young boy was then immediately shot dead by a U.S. soldier.  He witnessed the deadly human toll, observing the broken and dismembered bodies of dead U.S. soldiers and Afghan civilians, both in the course of his duty in Afghanistan and while hospitalized there for his knee injury.

Prior to Mr. Jackson's war zone experience, he had no serious criminal history.  His only legal transgression was a minor shoplifting incident on base in 2001.

Mr. Jackson's outlook after his return from Afghanistan was grim.  He did not believe he would live very long, and he did not expect have a normal life.  Following his discharge from the Army in February of 2004, as his criminal history reflects, his behavior became more erratic.  His

6

actions were consistent with those of a person suffering psychologically and self-medicating with marijuana.  After he lost a job and learned unexpectedly that he would be a father, he believed he was not up to all that life required of him.  He attempted suicide.  Police intervention ultimately prevented that.  (The criminal history entry in ¶36 relates to those events.)

Since his discharge and until this case, he has had trouble maintaining employment and steady relationships.  He has suffered from the many symptoms that arise from post-traumatic stress disorder, including anxiety and depression, the inability to sleep, social isolation, irritability.  As the report from the Boston Vet Center, attached within Exhibit B, notes, Mr. Jackson's history since his experience in Afghanistan reflects that he suffers from PTSD.  The symptoms from that disorder at times have affected him severely.  He also has been rated disabled as a result of service-connected PTSD.  Exhibit B.

Mr. Jackson's involvement in this case and the case in Charlestown, Massachusetts are part of that continuum.  When Mr. Jackson was arrested in this case, he was using marijuana on a regular basis.  For no good reason, he possessed a firearm.  His conduct reflected the same influences as the history that developed after Afghanistan.

Incarceration since November 2009 has changed Mr. Jackson for the better.  He is remarkably positive, despite the serious legal predicament in which he finds himself, because he has found some answers during his period of incarceration and has learned a great deal about the support system that exists for him, a support system of family and friends that he did not realize he could lean on.  He knows he must be penalized for his actions, for which he accepts full responsibility, but he feels fortunate that incarceration has enabled him to learn about the root of his problems and to discover that he has people to lean on.  He is relieved and optimistic about

7

his future.

The character letters submitted to the Court describe a man who, at his core, is a far more compassionate, thoughtful, capable and talented individual with far more to offer than his involvement in this case otherwise might suggest.  Those letters describe a person who was able to overcome hardship as a child and youth to become an upstanding young adult, responsible and selfless enough to make the noble decision to serve his country.  With the realization on Mr. Jackson's part that he is in need of assistance and that he has plenty of it around him–including the support of the Court's supervision resources following any period of imprisonment–there is little question that Mr. Jackson can overcome the problems that led him here and once again be an extremely productive member of society.

**B.**      ***The kinds of sentences available, the sentencing guidelines and policy statements, and purposes of sentencing to be served.***

The applicable sentencing guideline range is 18 to 24 months.  Mr. Jackson has been detained in custody since November 9, 2009 in connection with his arrest November 7, 2009 on the pending Massachusetts state case.  Combined with the 30 days detention immediately following Mr. Jackson's arrest of August 14, 2008 on state charges in Rensselaer County (adopted as this federal case), Mr. Jackson has been detained for 21 months, roughly the equivalent of the high end of the applicable guideline range, 24 months, with likely credit for good behavior.

Mr. Jackson has not yet been sentenced in the Charlestown, Massachusetts case.  The disposition of that case included no agreed upon sentence.

The statutory purposes of sentencing would be served by a sentence at the low end of the

guidelines.  Those purposes also would be served by a sentence that credits, or backs out, time Mr. Jackson already has been detained from the ultimate sentence to be imposed.

Mr. Jackson's offense is a serious one.  His nearly two years in detention reflects the seriousness of the offense.  Mr. Jackson from this point forward will receive all the support and assistance he has needed for too long, and the beneficial effect of that support drastically reduces the need to incapacitate him or to impose substantial further imprisonment to deter him from the commission of similar conduct in the future.  In light of Mr. Jackson's military service and the likely contribution of Mr. Jackson's service-related psychological condition to this offense, a sentence involving no further imprisonment would not be an unjust punishment and would not promote disrespect for the law but instead would reflect the compassion that the law permits. Since it also would allow immediate mental health treatment, such a sentence would be consistent with the statutory recognition "that imprisonment is not an appropriate means of promoting correction and rehabilitation."  18 U.S.C. §3582(a).

**CONCLUSION**

Taking into consideration all of the factors and considerations under 18 U.S.C. §3553(a), Mr. Jackson respectfully requests that the Court impose a sentence at the low-end of the sentencing guidelines, with credit to Mr. Jackson for time in detention, with a period of supervised release.

Date:  June 29, 2011                                                  LISA PEEBLES
                                                                                   Federal Public Defender


                                                            By:      */s/Timothy E. Austin*
                                                                                   Timothy E. Austin
                                                                                   Bar Roll No. 508098

Assistant Federal Public Defender
39 North Pearl Street
Albany, New York 12207
Tel:  (518) 436-1850
Fax: (518) 436-1780
Email:  tim_austin@fd.org

To:     United States District Court Clerk
        Carlos Moreno, Esq., AUSA
        Kelly A. Hart, U.S. Probation Officer

10

**CERTIFICATE OF SERVICE**

I, Timothy E. Austin, Esq., attorney of record for the above-named defendant, hereby certify that on June 29, 2011, I electronically filed the foregoing Sentencing Memorandum, with Exhibits, with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to Carlos Moreno, Assistant U.S. Attorney, and I served the same upon U.S. Probation Officer Kelly A. Hart by emailing a .pdf copy of the same to Kelly_Hart@nynp.uscourts.gov.

LISA PEEBLES
Federal Public Defender

By:     */s/Timothy E. Austin*
        Timothy E. Austin, Esq.
        Assistant Federal Public Defender
        Bar Roll No. 508098
        39 North Pearl St., 5th Floor
        Albany, NY 12207
        Tel: (518)436-1850
        Fax: (518)436-1780
        Email:  tim_austin@fd.org